101 F.3d 705
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Zohra ABASSY, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70393.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 20, 1996.
Decided Nov. 14, 1996.
 
 1
 Petition to Review a Decision of the Immigration and Naturalization Service, No. Aft-qbw-gbm.
 
 
 2
 B.I.A.
 
 
 3
 REVIEW DENIED.
 
 
 4
 Before: KOZINSKI and LEAVY, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 
 5
 MEMORANDUM**
 
 
 6
 Zohra Abassy petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") deportation order. We find substantial evidence supports the BIA's decision and therefore deny the petition.
 
 
 7
 Abassy is a native of Afghanistan and a German citizen. She fled Afghanistan in 1980, following the Soviet invasion, and received asylum in Germany, where she became a citizen in 1991. While in Germany, she claims to have been subjected to racially motivated attacks and to racial discrimination. In 1981 two girls intentionally ran into her with their bicycles, breaking Abassy's leg, and in 1982, a woman let her dog try to attack Abassy. In both instances, the attackers berated Abassy on account of her race. A policeman who intervened to stop the dog attack discouraged Abassy from filing a complaint, telling her that the court was unlikely to take her word over a German's. She complains of discrimination in school and in job applications, of dunking at a public pool, and of verbal abuse on public transportation. In addition, Abassy's ten year old nephew was beaten nearly to death in 1989--he and his family subsequently received asylum in Canada. At her deportation hearing, Abassy also submitted documentary evidence of racist violence in Germany.
 
 
 8
 Abassy was admitted to the United States in February 1992 on a six-month visitor's visa. In April 1994, she was served with an order to show cause why she should not be deported. She petitioned both for withholding of deportation and for asylum. Following her October 1994 deportation hearing, the IJ rejected Abassy's petitions and granted voluntary departure. Abassy filed a timely Notice of Appeal to the BIA, which "affirmed [the IJ's decision] based upon and for the reasons set forth in that decision." We have jurisdiction over Abassy's petition. 8 U.S.C. § 1105a(a).
 
 
 9
 The INS has discretion to grant asylum to an alien who is "unable or unwilling to return to [her country of origin], and [is] unable or unwilling to avail ... herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A) (emphasis added). Abassy must establish four elements to be eligible for asylum: (1) She must fear persecution upon return; (2) her fear must be well-founded; (3) the persecution must be on one of the bases enumerated in the statute; and (4) she must show either that persecution is by the state or that the state is unwilling or unable to control it.
 
 
 10
 The IJ did not expressly question Abassy's subjective fear of persecution but found both that she had submitted insufficient evidence to establish past persecution or a well-founded fear of future persecution and that she failed to prove that the German government was unable or unwilling to control the perpetrators of hate crimes.
 
 
 11
 Abassy attacks the BIA's factual findings. We must uphold factual findings if they are supported by "substantial evidence." Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). To obtain a reversal of the BIA's determination, Abassy "must demonstrate 'that the evidence [she] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.' " Id. at 1431 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992)). Because the BIA adopted the IJ's findings, we review those findings to determine whether "substantial evidence" supports them.
 
 
 12
 In support of Abassy's claim of racial discrimination amounting to persecution, she offered testimony and documentary evidence concerning her test scores, her brother's medical school admissions, periodic verbal abuse that she had suffered, and racial violence in Germany generally. Assuming the evidence reflects racial discrimination, it is not sufficient to amount to persecution within the meaning of the Act. Fisher v. INS, 79 F.3d 955, 961 (9th Cir.1996) (quoting Ghaly, 58 F.3d at 1431) ("Persecution is an extreme concept, which ordinarily does not include '[d]iscrimination on the basis of race ... as morally reprehensible as it may be.' "). Where "private discrimination is neither condoned by the state nor the prevailing social norm, it clearly does not amount to 'persecution' within the meaning of the Act." Ghaly, 58 F.3d at 1431. No evidence to meet that test was presented.
 
 
 13
 In support of her claim of violence, Abassy submitted documentary evidence and testimony indicating that the violence she fears is directed at foreigners and, by inference, is motivated by their race. "The well-founded fear standard requires asylum-seekers to prove specific facts linking the applicant to political, ethnic, racial, or national oppression." Ivezaj v. INS, 84 F.3d 215, 221 (6th Cir.1996). More than simple membership in a group is required. Id. The evidence shows only that Abassy belongs to a group that may be vulnerable to attack.
 
 
 14
 Moreover, to qualify under section 1101(a)(42)(A), persecution must be either by the government or by groups the government is "unable or unwilling" to control. McMullen v. INS, 658 F.2d 1312, 1315 & n. 2 (9th Cir.1981) (holding that IRA threat may constitute persecution); see Adebisi v. INS, 952 F.2d 910, 913-14 (5th Cir.1992) (stating that persecution means either persecution by the authorities or "specially oppressive" political conditions). Abassy argues that "the pervasiveness of ... attacks [against foreigners], as well as the general attitude [of racial animus and violence], are [sic] evidence ... that the government is unwilling or unable to protect [Abassy] from racially motivated persecution." The record in this case shows, however, that the German authorities generally have been both willing and able to apprehend and punish perpetrators. The record does not compel a determination that the German government is not willing and able to control the violence.
 
 
 15
 The petition is DENIED.
 
 
 
 *
 Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3